THE DAKOTA LIVE STOCK & INVESTMENT COMPANY, a Corporation, Appellant, v. K. H. BISHOP and E. M. Bishop and C. B. Palmer, Respondents.

(191 N. W. 491.)

**Bills and notes — plaintiff in foreclosure action held not bona fide purchaser of note and mortgage; plaintiff in foreclosure action held not entitled to retain moneys paid on land purchase contract.**

In an action by an assignee to foreclose a real estate mortgage where the defendants filed a counterclaim, seeking the recovery of certain moneys which the plaintiff retained and sought to apply upon the mortgage note,—the foreclosure action being by stipulation tacitly abandoned and the contested issue limited to the counterclaim, the evidence is examined, and it is *held* to show

(a) That the plaintiff is not a bona fide purchaser of the note and mortgage.

(b) That the plaintiff had knowledge of the rights of the defendant under the real estate purchase contract and participated in the acts resulting in failure of consideration to the defendant, wherefore it became liable to repay to the defendant any balance retained that would otherwise be applicable to the payment of the mortgage note.

Opinion filed December 22, 1922.

Bills and Notes, 8 C. J. § 1358 p. 1046 n. 9, p. 1047 n. 10. Vendor and Purchaser, 39 Cyc. p. 2058 n. 21; p. 2067 n. 94.

Appeal from a judgment of the District Court of Sioux County, North Dakota, *Lembke, J.*

Affirmed.

*F. M. Jackson* and *W. D. Hickman,* for appellant.

"A contemporaneous oral agreement that a note, payable to a certain person, shall not be transferred by the payee, cannot be shown in defense to an action on the instrument, as to allow such proof would be to contradict the written contract. Nor can the makers of a note defeat a recovery by the payee by showing that it has been negotiated contrary to its terms or the agreement of the parties where the makers themselves have put it in circulation." Wardell v. Hughes, 3 Wend. (N. Y.) 418; Ueland v. More Bros. 22 N. D. 283; Bay v. Williams, 112 Ill. 91, 54 Am. Rep. 209; Starbird v. Cranston, 24 Colo. 20, 48 Pac. 652.

"1. If a person for a consideration moving to him from another, agrees to pay that or any other's debt to a third person, the law at once,

operating upon the acts of the immediate parties to the transaction, supplies the essentials of privity between such persons and such third person, establishing binding contract relations between them, even though such third party was a stranger to, and had no knowledge of the transaction.

"2. In case of the establishment of contractual relations in the manner indicated in the foregoing rule, they cannot be subsequently varied by any agreement between the immediate parties to the transaction, not consented to by the third party.

"3. The rule last above stated applies to a case where one takes a conveyance of real estate, agreeing as part consideration therefor to pay the debt of the grantor, or that of some other person, to a third party." Fanning v. Murphy, 126 Wis. 538, 105 N. W. 1056. ·

"Contractual relations being established in the manner indicated in the preceding paragraph, neither one nor both of the immediate parties to the transaction can rescind the same or in any way interrupt or prejudice the rights of such other party without his consent." Tweedale v. Tweedale (Wis.) 61 L.R.A. 509.

*P. B. Garberg,* for respondents Bishop.


BIRDZELL, Ch. J. This is an appeal from a judgment in favor of the defendants upon a counterclaim filed in an action to foreclose a real estate mortgage. The case is here for trial de novo. The action was originally begun to foreclose a mortgage on certain real estate in Sioux county, but it appeared upon the trial that the plaintiff had failed to take certain preliminary steps required by the statute to enable it to foreclose the mortgage; so, after the trial, the parties stipulated that, regardless of the decision on the plaintiff's affirmative cause of action, they desired a disposition of the defendants' counterclaim. Hence, the issues are concerned wholly with the merits of the counterclaim.

The facts necessary to an understanding of the case are as follows: The defendants K. H. and E. M. Bishop, prior to May 1918, had entered into a contract for the purchase of certain lands from the defendant C. B. Palmer. On or about May 13, 1918, Palmer and James H. Lemmon, secretary and treasurer of the plaintiff company, went to the house of the Bishops and while there' a modification of the land purchase contract between Palmer and the Bishops was effected. By this

contract the Bishops agreed to or did purchase certain lands of Palmer for a consideration of $6,907, plus $1,000 in the shape of a mortgage to Barnes Brothers, which the purchasers assumed and agreed to pay. Palmer, at the time, was indebted to Lemmon or to his company, the plaintiff, and Lemmon held a mortgage of $15,000, covering, among other lands, the land which the Bishops were purchasing. The two Bishops are husband and wife. The principal negotiations on May 15th were conducted by Palmer and Mrs. Bishop. At the conclusion, however, Bishop was consulted. Lemmon drew a note for the $6,907 consideration payable to Palmer or order November 10, 1918. He also drew up a mortgage on the land securing this note; also a chattel mortgage on live stock owned by the Bishops, all running in favor of Palmer. No deed was drawn or executed at the time, due to the fact, as testified by Lemmon, that he had no North Dakota form, but ther was an understanding that the deed would later be executed and delivered to the Bishops. The note and real estate mortgage were respectively indorsed and assigned to the plaintiff in payment of obligations owing it by Palmer.

The Bishops were indebted to the plaintiff on account of a cattle loan to the amount of $5,617.19. In September 1918, they paid $2,000 on the cattle loan note, and on December 5, 1918, they turned over to the plaintiff the proceeds of a sale of some cattle amounting to $5,662.63. The plaintiff contends that the proceeds of the cattle sale were applied on the Bishops' indebtedness so as to discharge parts of the different obligations—$3,000 being applied on the real estate mortgage note, the balance on the cattle note and some other small indebtedness; whereas, the Bishops claim that they specifically directed application to the cattle note and some other small indebtedness so as to completely discharge these obligations, and that the balance of something over $1,500 might be held subject to the performance of the land contract by Palmer and Lemmon. Palmer upon one or more occasions tendered a deed to the Bishops, which they refused to accept, and they justify their refusal on the ground of the record incumbrance of $15,000. In March 1919, they conducted a sale of personal property and abandoned the premises. Palmer was there at the time, and it is claimed that he resumed possession. The subject-matter of the counterclaim involved on this appeal is the $1,500 balance in the hands of

Lemmon, which the defendants contend is theirs by reason of the failure to carry out the real estate contract. The trial judge sustained the contention of the Bishops and adjudicated the claim in the amount of $1,487.49, giving judgment for that amount with interest from December 5, 1918.

The appellant maintains that it was at all times ready and willing to execute and deliver to the defendants a partial satisfaction of the $15,000 mortgage so as to clear the title, which the defendants were to receive, of all incumbrances save the $1,000 mortgage, which they had agreed to assume; that it had no notice of Palmer's failure to deliver a deed to the other defendants, the Bishops; that neither it, nor its officer and agent, Lemmon, was in any way concerned with the real estate transaction between Palmer and the Bishops other than as purchasers of the mortgage; and that neither it, nor Lemmon, assumed any obligations whatsoever in favor of the Bishops in connection with the real estate deal. It is also contended that according to the preponderance of the evidence no directions were given for applying the moneys paid by the defendants, and that consequently they were bound by the application made by the creditor. A further contention is made that if the evidence shows a rescission of the real estate contract between the immediate parties to it, the plaintiff's rights cannot be affected, as it was not a party.

It is clear upon this record that the defendants, the Bishops, never obtained title to the lands purchased. It is equally clear that though a deed was tendered to them, the title sought to be conveyed was not one free and clear of all incumbrance above $1,000, from which it follows that the contract was never so far performed on the part of Palmer as to put the Bishops in default. The record further shows that they were willing and endeavoring to perform on their part for a long period prior to the abandonment of the premises in March 1919; and that the plaintiff, through its agent Lemmon, was familiar with the terms of the contract from the beginning. It knew the rights of the Bishops thereunder. It knew that the contract was executory. It knew that it had never been performed on the part of Palmer and that it was impossible for it to be performed without its releasing the $15,000 mortgage. Furthermore, we think the record clearly shows that Lemmon was at all times as much interested in the performance of the real estate contract as the imme-

diate parties to it, for he was apparently desirous of canceling part of Palmer's obligations to him or his company through the assumption or payment by the Bishops of a like amount. The evidence approaches proof of a novation, if, indeed, it does not in fact establish it. We are of the opinion on this record that the plaintiff cannot claim to stand in the position of a bona fide purchaser of the note and mortgage, but rather that it is a party to the transaction with knowledge of, and participation in, the failure of consideration upon which the rights of the defendants are grounded. After the failure of Palmer to perform for so long a period, it is not enough for this plaintiff to assert a mere willingness and readiness on its part to have released its mortgage. It took its mortgage with a knowledge of the immediate rights of the Bishops in the premises and it had constant notice that those rights had never been enjoyed. Since affirmative acts on the part of the plaintiff were required to give to the defendants the rights to which it knew they were entitled, and since it accepted the mortgage note with full knowledge of the situation, it is as chargeable with the consequences of the failure of consideration as Palmer himself. It follows that the defendants are entitled to recover from the plaintiff any surplus that might be held by it which otherwise would be applicable to the mortgage or land contract.

Even if it be assumed that the plaintiff applied a portion of the cattle proceeds to the real estate contract without any contrary direction being given by the defendants, the legal situation of the parties is, in our view of the case, in no manner affected. Hence, it is unnecessary to discuss or to weigh the conflicting testimony.

The judgment is affirmed.

CHRISTIANSON, BRONSON, and ROBINSON, JJ., concur.

GRACE, J., concurs in the result.